## DECLARATION

I, Jeffrey Gruppo, Special Agent with the U.S. Food and Drug Administration, Office of Criminal Investigation (FDA-OCI), state under penalty of perjury, pursuant to Title 28, United States Code, Section 1746, that the following is true and correct to the best of my knowledge, information, and belief:

## I.    IDENTITY AND EXPERIENCE OF DECLARANT

(1)    I am an "investigative law enforcement officer" of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, that is an officer of the United States empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18, United States Code.

(2)    I am currently employed as a Special Agent with the Food and Drug Administration (FDA) Office of Criminal Investigation (OCI). As a Special Agent with the FDA-OCI, I am responsible for investigating violations of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA") and other applicable violations of Title 18 of the United States Code.  I have been a Special Agent with the FDA-OCI since July 2019 and have over 17 years of experience in federal law enforcement. Prior to my work with the FDA-OCI, I was employed by the United States Department of Defense, Pentagon Force Protection Agency ("PFPA") for eight years as a Special Agent. During that time, I spent five years assigned to the Federal Bureau of Investigation's Joint Terrorism Task Force.  Prior to that position I worked for PFPA as a Police Officer for approximately four years.

(3)    I have completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center.  I have also attended OCI's Special Agent Training Program and received additional training in financial investigations and asset forfeiture. During my career, I have received extensive training and conducted various types of investigations including, but not limited to, drug investigation, wire and mail fraud, financial crimes, and cybercrimes.

(4)    Based on your declarant's training, experience, conversations with other law enforcement officers, and participation in financial crimes and drug investigations (including this investigation), your declarant knows:

   a. That the United States Postal Service mail system is frequently used to transport controlled substances and/or the proceeds from the sales of controlled substances to areas throughout the United States;

Page **1** of 24

EXHIBIT

A

b. That individuals engaged in the illegal transportation of controlled substances often place assets in other persons' names and in the name of corporate entities to avoid detection and seizure of those assets by law enforcement officers;

c. That individuals involved in the manufacturing, sale, and distribution of controlled substances often establish businesses to make it appear as if they have legitimate sources of income, and they often deposit drug proceeds to the bank accounts of these businesses to make it appear as though the drug proceeds were earned by legitimate business activities; and

d. That where an individual's income cannot account for the level of wealth displayed and where evidence of drug trafficking exists, there is probable cause to believe that the item of wealth is either a direct product of illicit activity or is traceable thereto.

(5) In addition to the investigation by your declarant, this matter is also being investigated by the United States Postal Inspection Service (USPIS). The information contained in this declaration is a summary of documents and evidence collected by the participating agencies, and the financial analysis performed by an auditor at the United States Attorney's Office in the Eastern District of North Carolina. The underlying sources of information, all of which are deemed to be reliable for use in this federal investigation, include interviews of witnesses, records received pursuant to grand jury subpoenas and search warrants, and other reliable sources.

## II. __PURPOSE OF DECLARATION__

(6) I make this declaration in support of civil complaints seeking forfeiture of the following real and personal property (hereinafter, the "Subject Properties") pursuant to 18 U.S.C. § 981(a)(1), specifically:

a. Real property having the physical address of 192 Rosalyn Road, Rockingham, NC 28379, including any and all appurtenances and improvements thereto, being titled to Mark Meland and legally described in deed book 1953, page 613 of the Richmond County Registry, North Carolina

b. Real property having the physical address of 177 Westfield Drive, Rockingham, NC 28379, including any and all appurtenances and improvements thereto, being titled to Adam Meland and legally

described in deed book 1965, pages 296 of the Richmond County Registry, North Carolina

    c. Real property having the physical address of 119 Pineview Court, Rockingham, NC 28379, including any and all appurtenances and improvements thereto, being titled to Alexander Meland and legally described in deed book 1978, pages 582-585 of the Richmond County Registry, North Carolina.

    d. $266,585.98 in sale proceeds currently being held in the trust account of Van Camp, Meacham & Newman, PLLC, resulting from the sale of 116 Pineview Court, Rockingham, NC 28379

    e. $2,993.00 in U.S. Currency seized on September 20, 2023, from 504-C East Broad Ave., Rockingham, NC 28379

    f. $166,990.00 in U.S. Currency seized on September 20, 2023, from 192 Rosalyn Road, Rockingham, NC 28379

(7) The forfeitable property was involved in, is traceable to, or facilitated certain federal offenses (hereinafter, the "Subject Offenses") that occurred in the Middle District of North Carolina and elsewhere, including violations of Title 18, United States Code, Sections 1956 and 1957, and violations of the Controlled Substances Act, Title 21, United States Code, Sections 801 *et seq.*

(8) Because this declaration is being submitted for the limited purpose of stating sufficiently detailed facts to establish that there is probable cause to believe the Subject Properties are subject to forfeiture, it does not include all of the facts that have been learned during the course of the investigation.

## III.   CIVIL FORFEITURE AUTHORITY

(9) Title 18, United States Code, Section 981(a)(1)(A) provides that "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section 1956 [or] 1957 … of [Title 18], or any property traceable to such property" is forfeitable to the United States.

(10) Title 18, United States Code, Section 981(a)(1)(C) provides that "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense" is forfeitable to the United States.

(11)     A transaction violates 18 U.S.C. § 1957 when a person knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000, which is derived from specified unlawful activity. A transaction violates 18 U.S.C. § 1956(a) when a person, knowing that the property involved in the financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity, and possesses either the intent to promote the carrying on of specified unlawful activity, or knows that the transaction is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity, or to avoid a transaction reporting requirement under State or Federal law. "Specified unlawful activity" includes the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), punishable under any law of the United States. 18 U.S.C. §§ 1956(c)(7)(A), 1961(1)(D). A transaction undertaken in the course of a conspiracy to commit money laundering violates 18 U.S.C. § 1956(h).

(12)     Title 21, United States Code, Section 881(a)(6) provides that "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter" shall be forfeited to the United States.

(13)     Title 21, United States Code, Section 881(a)(7) provides that "[a]ll real property . . . which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment" shall be forfeited to the United States.

## IV.     INVESTIGATION OVERVIEW

### a.  OVERVIEW OF SUBJECTS

(14)     Mark James Meland was an individual living in the Middle District of North Carolina, with his primary residence located at 192 Rosalyn Road, Rockingham, NC 28379.

(15) Mark Meland was the registered owner of Copy Proz, a printing/copying business in Rockingham, North Carolina. The business was registered in 2018, with the principal address, at the time of filing, listed as "607 A East Broad Ave Rockingham NC 28379."

(16) Mark Meland was also the registered business owner of Madison James Research. The North Carolina business certificate, filed in September 2021, lists the nature of the business as "supplement research," with the address "607-A East Broad Ave., Rockingham, NC 28379."

(17) The investigation revealed that both Madison James Research and Copy Proz were initially operating out of 607-A East Broad Ave., Rockingham, NC 28379, but subsequently moved to new locations: 504-B East Broad Ave., Rockingham, NC 28379 and 504-C East Broad Ave. Rockingham, NC 28379, respectively.

(18) Neither Mark Meland nor his businesses were registered with the FDA to engage in the manufacturing, preparation, propagation, compounding, or processing of drugs, nor were they registered as food facilities. Likewise, the United States Drug Enforcement Administration did not assign Meland a DEA Registration Number that would authorize him to research, manufacture, or dispense controlled substances.

(19) Adam Meland is Mark Meland's brother and worked for Mark Meland and assisted him with operating his businesses. Alexander Meland is Adam Meland's son and Mark Meland's nephew. Alexander is 23 years old.

(20) Noah Rasdon is the owner of the business Magic Nutrition, a vitamin supplement shop located in Arkansas. Magic Nutrition is a large purchaser of products from the Madison James Research website (described further below).

**b. OVERVIEW OF SUBJECT WEBSITE**

(21) Meland's company, Madison James Research, was linked to the website www.madisonjamesresearchchems.com (hereinafter "Subject Website"). The Subject Website was an e-commerce website offering a variety of FDA-regulated products for sale and drugs as defined by the FDCA.

(22) Madison James Research also conducted sales of products through email or over related digital communication platforms. Meland did not overtly offer products with controlled substances for sale on the Subject Website. However, Meland would sell products containing controlled

Case 1:24-cv-00327-UA-JLW   Document 1-1   Filed 04/16/24   Page 5 of 24

substances using these other communication platforms. Further, on at least one occasion, Meland used sales through his website to process and mask the sales of controlled substances, as demonstrated by Undercover Purchase 3, described further below.

(23) The Drug Enforcement Administration publishes the *Lists of Scheduling Actions, Controlled Substance, Regulated Chemicals*,[1] which is referred to as an "orange book." According to the publication dated July 2023, several products for sale on the Subject Website or concealed through the Subject Website are categorized as controlled substances, including Testosterone (a Schedule III controlled substance) and Modafinil (a Schedule IV controlled substance).

(24) Products could be purchased from the Subject Website using a variety of payment methods, including: eCheck (through eDebitDirect), Western Union, Zelle, Cash App, Apple Pay, Venmo, Green Dot (MoneyPak), and "secure credit card processing," which is processed through a third-party company.

## c.  <u>OVERVIEW OF FINANCIAL ACCOUNTS</u>

(25) BANK OF AMERICA ("BoA") Account *4761 (or "MJR Account") was a checking account held by MARK MELAND SOLE PROP DBA MADISON JAMES RESEARCH and Mark Meland had operational control of this account. Electronic payments from customers were deposited into this account.

(26) BoA Account *1366 (or "Copy Proz Account") was a checking account held by MARK MELAND SOLE PROP DBA COPY PROZ and Mark Meland had operational control of this account. Electronic payments from customers were deposited into this account.

(27) BoA Account *0007 (or "Personal Account") was a checking account held by MARK MELAND and Mark Meland had operational control of this account. Electronic payments from customers were deposited into this account.

## d.  PROCEDURAL HISTORY

(28) On September 19, 2023, a warrant to search Meland's primary residence and three business, all located in Rockingham, NC, was issued in the

---

[1] https://www.deadiversion.usdoj.gov/schedules/orangebook/orangebook.pdf.

Middle District of North Carolina (1:23-mj-00385-JLW). The search warrant was executed on September 20, 2023, by federal agents.

(29)   On September 22, 2023, a warrant was issued in the Middle District of North Carolina to seize three bank accounts associated with Mark Meland (listed above: BoA Account *1366; BoA Account *0007; BoA Account *4761), and one bank account associated with an associate of Meland, Terry Hoover. (1:23-mj-00389, -390, -391, -392-JLW).

(30)   On September 28, 2023, a complaint was sworn out in the Eastern District of North Carolina, and an arrest warrant issued for Mark Meland (5:23-mj-02147-JG). The complaint charged Meland with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) and introducing misbranded drugs into interstate commerce, in violation of 21 U.S.C. §§ 331(a) and 333(a)(1). Meland was arrested the same day.

(31)   The criminal case against Mark Meland abated and was dismissed following his death on February 5, 2024.

## IV.   FACTS SUPPORTING FORFEITURE

(32)   Your declarant believes that a substantial portion of the monies Mark Meland deposited into his personal and business bank accounts are proceeds from selling controlled substances through Madison James Research. Financial analysis shows that Meland and others conspired to launder these proceeds by, among other things, engaging in monetary transactions involving criminally derived property of a value greater than $10,000 involving these bank accounts, and engaging in financial transactions knowing that the transactions were designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the property, or to avoid a transaction reporting requirement under State or Federal law, all in violation of money laundering statutes. During the course of the money laundering conspiracy, Meland and his co-conspirators purchased and sold real estate located in the Eastern and Middle Districts of North Carolina and used some of these properties to manufacture and/or to receive shipments of materials involved in the manufacture of controlled substances.

### a.   UNDERCOVER PURCHASES

(33)   As part of the investigation into Mark Meland and Madison James Research, agents engaged in multiple undercover purchases of products

offered for sale on the Subject Website or facilitated through the Subject Website.

(34) <u>UC-Purchase 1</u>: On or about July 15, 2022, an agent used a fictious name and undercover email address (hereinafter "UC email address") to make a purchase of products through the Subject Website.

    a. The products purchased were "MK-677" and "Modanifil.[2]" The Subject website stated: "Modafinil reduces extreme sleepiness due to narcolepsy and other sleep disorders." The DEA lists Modafinil as a Schedule IV controlled substance.

    b. The payment method chosen by the agent was "secure credit card processing."

    c. After placing the order, the UC email address received a purchase confirmation email, identified as order number 34203.

    d. After placing the order, the UC phone number received a text messaged invoice from Hoover Pilot Car Service. The message included a link for an invoice generated through the payment service PaymentsHub. The invoice number was 34203 and referenced the purchase as "Madison James Research – Base Price," without providing an itemized list of products purchased. Payment was made though PaymentsHub using a UC credit card in the amount of $127.25.

(35) On or about July 25, 2022, the agent retrieved a package from a UC commercial mailbox that had been shipped interstate via the United States Postal Service, from North Carolina to Florida.

    a. The return address on the package was "C.P. 607A East Broad A[sic] Rockingham NC 28379." Your declarant believes the initials "C.P." on the return address are for the business Copy Proz, owned by Mark Meland, and located at the same address.

    b. The package contained black bottles containing capsules, separately labeled "Modanifil" and "MK-677." The label on both bottles indicated branding of "MJR Laboratories."

    c. The products received were sent to the FDA Forensic Chemistry Center ("FCC") for testing. The FCC analysis revealed that the

---

[2] It is believed that the Subject Website, in places, has a misspelling of the product Modafinil as "Modanifil."

capsules from the bottle labeled "Modanifil" contained Tamoxifen and Finasteride, but no Modafinil (Schedule IV controlled substance) was found in the capsules.

(36) <u>UC-Purchase 2</u>: On or about February 7, 2023, agents made a second undercover purchase of products from the Subject Website.

    a. The purchase included the products GLP-1 Semaglutide 10mg, Tadalafil/Sildenafil capsules, and Modanifil capsules – all of which are medications requiring a prescription but not scheduled controlled substances. Madison James Research did not require a prescription to complete the purchase and no prescription was provided.

    b. The order was identified as number 37900. Invoice number 37900 from Hoover Pilot Car Service was later received at the UC email address and payment was made by a UC credit card in the amount of $253.00, similar to UC Purchase 1.

(37) On or about February 14, 2023, the agent received the products from UC Purchase 2.

    a. The Tadalafil/Sildenafil and Modanifil products were shipped in black plastic bottles and the GLP-1 Semaglutide was a white powder in a glass ampule. The labels on all three products were branded as "MJR Laboratories." None of the labels or labeling for these three products contained any directions for use. FDA Forensic Chemistry Center testing results on these products are still outstanding as of April 15, 2024.

    b. The products had been shipped interstate through the United States Postal Service, from North Carolina to Florida.

    c. The return address on the package was "C.P. 607A East Broad Avenue Rockingham NC 28379." The contents of the package were shipped using the same modus operandi of packing the products in USPS shipping materials, as with UC Purchase 1.

(38) <u>UC-Purchase 3</u>: This undercover purchase was initiated based on an email exchange regarding the sale of testosterone. Beginning on or about July 31, 2023, madisonjamesresearch@gmail.com offered to sell the agent (through his UC email address) 10 bottles of "test"[3] for $200.

_____

3 Based on my training, experience, research, and familiarity with Madison James Research, I recognize this as a reference to testosterone.

The email stated that the agent should place a purchase for an equivalent amount of products through the Subject Website. A credit card invoice would then be sent, and the "test" would be shipped in lieu of the products ordered.

    a. Following these instructions, on or about August 2, 2023, the agent placed an order for two bottles of Tadalafil/Sildenafil and two bottles of Tamoxifen from the Subject Website, which equaled $200.

    b. An invoice was subsequently received from Hoover Pilot Car Service, with the invoice line stating "MJR-Base Price (1)." Payment in the amount of $208.00 (including $8 shipping) was made to Hoover Pilot Car Service through a UC credit card.

(39) The purchase was received on or about August 8, 2023. It contained 10 vials that were labeled as "TESTOSTERONE ENANTHATE 300mg" at 10ml each vial. The vials' labels displayed the brand FITZ Scientific. They did not display an "RX Only" statement but did state "DR. AUTH REQUIRED."

    a. The package's return address was "C.P. 504C East Broad Avenue Rockingham NC 28379" (SUITE C). The products had been shipped interstate through the United States Postal Service, from North Carolina to Florida.

    b. On or about September 15, 2023, FCC lab testing confirmed the vials contained testosterone enanthate (a Schedule III controlled substance). No additional Active Pharmaceutical Ingredients (APIs), controlled substances, or steroids were identified, although vegetable oil was also identified as an ingredient.

**b. <u>SURVEILLANCE</u>**

(40) Agents conducted surveillance of Meland's businesses, located at 504 E. Broad Avenue in Rockingham, North Carolina. On or about June 6, 2023, and July 7, 2023, agents photographed and recovered trash from a dumpster located outside of Meland's office building.

(41) The items recovered during the trash pulls suggest Meland was manufacturing and packaging products to sell on his Subject Website. These items include, empty bottles of Propylene Glycol, an empty bottle of Everclear grain alcohol with a handwritten marking "Tad/Sild," printouts of email confirmations for Subject Website products, empty boxes of insulin syringes, empty glass vials, an empty box labeled "Empty Hard Gelatin Capsules," and labels for "BA Water 5ml."

### c. **GOOGLE SEARCH WARRANT**

(42) On or about May 10, 2023, a search warrant was issued out of the Eastern District of North Carolina to search Google accounts associated with Madison James Research and Copy Proz. This search warrant included the address madisonjamesresearch@gmail.com.

(43) Records from the Google account history showed queries related to drug manufacturing and controlled substances such as steroids and testosterone. Email records received showed evidence of manufacturing products for the website. For example, in an email chain in November 2021, a customer inquired into how many capsules Madison James Research can make at one time. The email response from madisonjamesresearch@gmail.com was: "600 in 15 minutes..." "I have 6 of the semiautomatic machines."

(44) The Google records also revealed attempts to hide the nature of the Madison James Research business. Instructions were given to website customers to use deceptive descriptions of the Subject Website order, in order to not be scrutinized by payment processors. For example:

   a. In an email chain beginning on April 18, 2023, Madison James provides instructions for payment through Venmo and states "Please put for Groceries Donation No Order Numbers. Venmo shuts us down when they see stuff about orders. Just payment and email it to us! Any order info your payment will force us to refund and delete your order. Thanks."

   b. In an email chain beginning on April 19, 2023, Madison James also instructed for a customer to state the purchase was related to "Groceries Donation," for a payment being made through the processor CashApp.

   c. On or about January 20, 2023, an order confirmation was sent to a purchaser with the initials M.H. for Tadalafil Capsules. M.H. is a repeat customer of Madison James Research and was previously instructed to use "Groceries Donation" as a description for a purchase he made through Venmo in September 2020.

(45) Records obtained from Venmo corroborate information uncovered in the google search. Between March 2020 and December 2022, there were more than 1,750 separate Venmo transactions totaling more than $334,000 paid to the Venmo accounts of N.H. (an employee of Mark Meland) and Mark Meland that included notes with deceptive descriptions, including, but not limited to "Grocery Donation",

"Furniture", "Dance Lessons", "Pizza", "Textbooks" and "School Supplies."

(46)  The email account records also showed Madison James Research in regular communication, by email, with an individual identified as Noah Rasdon. Rasdon frequently sent orders for a variety of products, including controlled substances, on behalf of third-party customers. Rasdon would provide the names of products, the quantities of products, and a name and address to ship the order to. Rasdon would also place bulk or wholesale orders with Meland to be delivered to Rasdon, instead of third-party customers, which also included controlled substances.

(47)  Evidence found in the email communications shows that between September 2020 and April 2023, Rasdon sent money to Mark Meland for orders that included controlled substances. For example:

a.  Rasdon first emailed Meland on or about September 12, 2020, inquiring if Meland offers wholesale orders. The next day, on September 13, 2020, Meland provided Rasdon a Venmo account to pay for an order of Human Chorionic Gonadotropin (HCG), which is a FDA regulated product, but not a controlled substance. Later that same day, Rasdon emailed Meland to ask if he carries steroids as well. On September 15, 2020, Meland responded to Rasdon and provided a price of $200 for 10 bottles of "test e 250," or Testosterone Enanthate, a Schedule III controlled substance. On September 16, 2020, Meland quoted Rasdon a price of $625 for 10 Tren E, or trenbolone, which is a Schedule III controlled substance. In the course of this email exchange, Rasdon claimed that he buys "1000 plus a month" in steroids.

b.  In an email chain beginning on or about January 5, 2022, Rasdon placed an order with Meland that included 40 units of Test E, 50 units of Test C, 25 units of Test P, 10 units of Tren E, 10 units of Tren A, 10 units of Dbol, five units of Anadrol, 20 units of Anavar, and five units of Winstrol (all Schedule III controlled substances). The subject line of the email read: "Order To Be Expressed To Me." According to FedEx records, Meland shipped a package to Rasdon in Alma, AR on January 7, 2022.

c.  In an email chain beginning on or about January 25, 2022, Rasdon placed an order with Meland that included 50 units of Test E, 40 units of Test C, 20 units of Test P, 15 units of Tren A, and 25 units of Tren E (all Schedule III controlled substances). Meland later provided a copy of the FedEx shipping label addressed to Noah Rasdon in Alma, AR.

Page **12** of 24

d. On or about August 1, 2022, Rasdon sent an order to Madison James Research on behalf of a customer with the initials R.K. The order included 50 units of Testosterone Enanthate (300mg), 50 units of Anavar, 50 units of Winstrol, 50 units of Anadrol, and 50 units of D-Bol[4] (all Schedule III controlled substances). According to FedEx, two packages were sent from Mark Meland to R.K. in Nampa, ID on August 1, 2022. According to Bank of America, Magic Nutrition sent an ACH transfer to Meland's Copy Proz account (BoA Account *1366) on August 1, 2022, for $6,964 and on August 3, 2022 for $5,420. All of the proceeds of this order appear to be from the sale of controlled substances.

e. On or about December 7, 2022, Rasdon sent an order to Madison James Research on behalf of a customer with the initials D.D. in Corpus Christi, TX. The order included four packs of Tren A[5] and 3 packs of Winny[6] (both Schedule III controlled substances). Approximately 44% of the total ordered items appear to be controlled substances. According to FedEx, a package was sent from Meland to D.D. in Corpus Christi, TX on December 8, 2022.

f. On or about March 1, 2023, Rasdon sent an order to Madison James Research on behalf of a customer with the initials B.K. The order included seven units of Deca[7], 40 units of Test E[8], four units of Anadrol, four units of Dbol, and four units of Winstrol (all Schedule III controlled substances). At least 37% of the total ordered items appear to be controlled substances. According to FedEx, a package was shipped from Meland to B.K. in Porter, TX on March 17, 2023.

g. In an email chain starting on or about March 1, 2023, Rasdon sent an order to Madison James Research on behalf of a customer with the initials J.U. The order included 50 units of Deca, 30 units of Tren A, and 100 units of Test E (all Schedule III controlled substances). According to FedEx, a package was shipped from Meland to J.U. in Miami, FL on March 15, 2023. All of the items ordered appear to be controlled substances.

h. On or about March 22, 2023, Rasdon sent an order to Madison James Research on behalf of a customer with the initial R., with

---

[4]  Based on my training, experience, research, and familiarity with Madison James Research, I recognize this as a commonly used nickname for Dianabol.

[5] I recognize this as a commonly used nickname for Trenbolone.

[6] I recognize this as a commonly used nickname for Winstrol.

[7] I recognize this as a commonly used nickname for Deca-Durabolin.

[8] I recognize this as a commonly used nickname for Testosterone Enanthate.

Page **13** of 24

the subject line "[R.] Special Order Shipped to [R.]". The order included 300 units of Test E and 100 units of Anavar (both Schedule III controlled substances), among other items. All of the items ordered appear to be controlled substances. According to FedEx, 73 packages were shipped from Meland to R.K. in Nampa, ID on March 24, 2023. The shipment also contained a reference line for the recipient as Warrior Labz.

    i.   On or about March 29, 2023, Rasdon sent an order to Madison James Research on behalf of J.U. The order included 50 units of Test E and 50 units of Anavar (both Schedule III controlled substances). It appears that all of the items ordered were controlled substances. According to FedEx, Meland sent a package to J.U. in Miami, FL on March 31, 2023. All of the items ordered appear to be controlled substances.

    j.   On or about April 10, 2023, Rasdon sent an order to Madison James Research on behalf of a customer with the initials M.J. in Coalgate, OK. The order included 25 units of Test E, 15 units of Dbol, and 15 units of Winny (all Schedule III controlled substances). According to FedEx, Meland sent a package to M.J. in Coalgate, OK on April 13, 2023. It appears that all of the items ordered were controlled substances.

    k.   On, or about, April 18, 2023, Rasdon sent an order to Madison James Research on behalf of a customer with the initials J.A. in Cabot, Arkansas. The order included five units of Tren A (a Schedule III controlled substance). At least 16% of the total items ordered appear to be controlled substances. According to FedEx, Meland sent a package to J.A. in Cabot, AR on April 19, 2023.

(48)   Mark Meland and Rasdon also discussed payment methods in email, particularly about making ACH payments to an account Meland held at Bank of America. From November 2020 through early February 2022. Rasdon paid Meland primarily via Venmo. During this timeframe, Meland received $8,242 in Venmo payments from a Venmo account associated with the email noahrasdon1234@gmail.com and $87,429 from a Venmo account associated with an email address which appears to be that of Noah Rasdon's father. These Venmo payments were predominantly deposited into Meland's Personal Account *0007. In an email chain beginning on or about December 7, 2021, Rasdon indicated he was having issues with payment processing and inquired about making ACH transfers to Meland. Meland replied with a copy of a check

from Bank of America in the name of Mark Meland Sole Prop DBA Copy Proz.

### d. <u>BANK OF AMERICA RECORDS</u>

(49) Investigators received Bank of America records pertaining to accounts held by Meland or the Subject Businesses. Meland opened an account under the business name "Mark Meland Sole Prop DBA Copy Proz," on or about March 19, 2019 (BoA Account *1366). The bank records show that this account received over $768,000 in credits from Magic Nutrition between February 2022 and August 2023.

(50) The Bank of America records revealed that Magic Nutrition made at least 95 ACH payments to Meland's Copy Proz Account *1366 in 2022 and through June 2023. Beginning in June 2023, Rasdon began sending wires to Meland from an account held in Rasdon's personal name. Approximately $305,000 was wired from Rasdon's personal account to Meland's Copy Proz Account *1366 between June and August 31, 2023.

(51) Between October 10, 2020, and March 22, 2023, Bank of America records show that Meland transferred no less than $803,591 from Copy Proz Account *1366 to his Personal Account *0007.

(52) Based on records obtained from Bank of America, on or about March 6, March 22 and May 4, 2023, agents noted three international transactions, in the amounts of $10,210, $6,000, and $5,250 respectively, wired from Copy Proz Account *1366, routed through Deutsche Bank for the benefit of a supplier ("Supplier-1").

(53) During a search of Google records, agents identified an email in which Madison James Research placed an order with Supplier-1. The order included Testosterone (1kg) and Trenbolone (400g). Supplier-1 sent Madison James Research email instructions to wire the funds to its bank account at Deutsche Bank. A partial payment of $10,210 was wired on March 6, 2023. The remaining $1,500 balance was paid by Bitcoin.

(54) Agents confirmed that Supplier-1 marketed directly to Madison James Research through email by sending a product list. The list contained the following scheduled drugs: Testosterone, Oxandrolone, Stanozolol, Oxymetholone, Trenbolone, and Nandrolone. Email records show Supplier-1 frequently emailed Madison James with offers to sell the above-mentioned products.

Case 1:24-cv-00327-UA-JLW   Document 1-1   Filed 04/16/24   Page 15 of 24

### e. **SEARCH WARRANT**

(55) On September 20, 2023, law enforcement executed a search warrant at Mark Meland's business locations and residence in Rockingham, North Carolina. Law enforcement agents found evidence of manufacturing, packaging, and shipping controlled substances from these locations. Mark, Adam, and Alexander Meland were present at the business location when the warrant was executed.

(56) In particular, when law enforcement entered "Suite A," one of three business office suites occupied by Meland, containers of controlled substances were found inside lockers. The contents of these containers have not yet been analyzed, but the preliminary evidence suggests Meland stored controlled substances, and products commonly known to be mixed with controlled substances, in these locations for use in his illegal drug shipments.

(57) Dozens of bottles containing liquids were seized from this location. Many of the bottles were clearly labeled with names your declarant recognizes as references to Schedule III controlled substances, specifically testosterone and steroids. In a preliminary review of the evidence seized, the below items contained labels (either the medication name, brand name, or commonly used nickname) recognized as Schedule III controlled substances:

  a. 21 bottles with labels for Sustanon (Testosterone isocaproate)

  b. 12 bottles with labels for Testosterone Enanthate (Test E)

  c. 11 bottles with labels for Primobolan (Metenolone enanthate)

  d. 10 bottles with labels for Tren A (Trenbolone)

  e. 4 bottles with labels for Winstrol (Stanozolol)

  f. 4 bottles with labels for Anavar (Oxandrolone)

  g. 4 bottles with labels for Deca-Durabolin (Nandrolone).

(58) In addition to controlled substances in liquid form, law enforcement also seized hundreds of small silver bags containing cuspules. These packaged bags also contained labels recognized as controlled substances, including 390 bags with labels for Dianabol (Methandienone), 12 bags labeled as Winstrol, 9 bags labeled as Primbolan, and 6 bags labeled as Sustanon.

Page **16** of **24**

(59)     The search also identified a number of components of manufacturing, such as capsules and packaging materials. Mark Meland made unprotected statements to law enforcement that he used grapeseed oil to manufacture testosterone and steroids. Nearly a dozen bottles labeled "grapeseed oil" were seized from Suite A. He also admitted to making the liquid products, to include testosterone and steroids, at his house located at 192 Rosalyn Road in Rockingham, North Carolina.

(60)     Mark Meland also made statements to law enforcement regarding his financial relationship with Rasdon and Magic Nutrition. Meland confirmed he received orders from Rasdon on behalf of other customers. Meland would ship products to the customers, and then receive proceeds from Rasdon for the purchase. A customer, identified by Meland as R.K., accounted for approximately 80% of the orders placed by Rasdon.

(61)     In addition to finding controlled substances and component parts during the search, law enforcement officers also seized a total of $169,983 in cash: $166,990 from Mark Meland's residence and $2,993 from 504-C E. Broad Ave., Rockingham.

### f. FINANCIAL TRANSACTIONS

(62)     An analysis of financial records obtained in this investigation show multiple purchases of properties with the proceeds derived from the Subject Website and the sales of controlled substances concealed through the Website.

(63)     Between March 19, 2019, and August 31, 2023, a total of $4,553,092.38 was deposited into Meland's Copy Proz Account *1366, of which $9,996.79 consisted of Venmo payments and $1,103,068 consisted of ACH or wire transfers directly from Rasdon and/or Magic Nutrition. An additional $577,390 consisted of transfers from Meland's Personal Account *0007 and MJR Account *4761. $484,335.22 represented proceeds from the sale of 4812 Addie Lane.

(64)     Between October 7, 2020, and March 22, 2023, Meland transferred a total of $1,023,591 from Copy Proz Account *1366 to his Personal Account *0007, of which $1,017,991 was transferred in the course of a monetary transaction greater than $10,000 in value.

(65)     Between December 6, 2022, and August 31, 2023, Mark Meland withdrew a total of $23,480 in 40 separate ATM withdrawals from his Copy Proz Account *1366. With the exception of a transaction in the amount of $202 and another for $402 (both on the same day), all

transactions were in the amount of $602.[9] Meland often made withdrawals on back-to-back days.

(66) Between August 10, 2020, and August 28, 2023, a total of $2,925,123.48 was deposited into Meland's Personal Account *0007, of which $271,342.04 consisted of Venmo payments. An additional $1,023,591 and $22,000 consisted of transfers from Copy Proz Account *1366 and MJR Account *4761, respectively. $30,000 represented down payments related to the sale of 4812 Addie Lane.

(67) Between May 20, 2021, and August 24, 2023, Mark Meland withdrew a total of $138,470 in 235 separate ATM withdrawals from his Personal Account *0007. Meland made three withdrawals in the amount of $202, two withdrawals in the amount of $402, 14 withdrawals in the amount of $502 and 216 withdrawals in the amount of $602. Meland often made withdrawals on back-to-back days.

(68) Between January 5, 2018, and July 31, 2023, a total of $1,707,125.45 was deposited into MJR Account *4761, of which at least $885,623 consisted of sales from the Subject Website deposited via eDebit Direct. An additional $220,385 and $174,747 consisted of transfers from Copy Proz Account *1366 and Personal Account *0007, respectively.

(69) On August 2, 2018, $10,000 in cash was withdrawn from MJR Account *4761 by way of a counter withdrawal. Between 9/27/21 and 7/29/2023, Meland made a total of $88,492 in 147 separate ATM withdrawals from MJR Account *4761. With the exception of one withdrawal for $600, the ATM withdrawals were all for $602. Meland often made withdrawals on back-to-back days.

4812 Addie Lane, Fayetteville, NC

(70) Mark Meland purchased a home in the Eastern District of North Carolina, with the deed in his brother's name, in March 2022 using funds from his personal and business accounts, which as described above, contained proceeds of and were involved in concealing and promoting the distribution of controlled substances.

---

[9] Based on my training and experience, the bank records reflect transactions that include ATM fees, so, for example, an ATM transaction in the amount of $602 consists of a $600 withdrawal and a $2 fee.

a. On February 22, 2022, Mark Meland wrote a check for $10,000, drawn on his Copy Proz Account, to Jagjit Mehmi and Baijit Kaur. The memo line stated: "Due Diligence."

b. On March 22, 2022, a $220,000 transfer was made from the Copy Proz Account to Meland's Personal Account. On the same day, Meland withdrew $414,065.64 from his Personal Account and purchased a Cashier's Check, payable to The Webb Law Firm for the purchase of 4812 Addie Lane, Fayetteville, NC, a house located in the Eastern District of North Carolina.

c. The contract to purchase the home at 4812 Addie Lane lists the "Buyer" as Mark James Meland. Meland signed the Offer to Purchase and Contract on February 21, 2022, as the buyer.

d. A North Carolina General Warranty Deed was filed with the Cumberland County Register of Deeds on March 23, 2022, transferring title of Lot 3 Henry's Place (4812 Addie Lane, Fayetteville, NC) from Baijit Kaur to Adam Scott Meland. Investigators identified Adam Meland as Mark Meland's brother.

(71) While the Fayetteville property was in Adam Meland's name, records show that Mark Meland shipped products related to the manufacturing of drugs, products, and controlled substances to this address, including Propylene Glycol and grapeseed oil, which are used in the manufacturing of controlled substances. Email records also indicate that Meland directed his suppliers of controlled substances and other drugs to ship product to the address in Fayetteville on at least one occasion.

(72) Financial records show Meland sold the Fayetteville property within months of purchasing it, depositing the funds from the real estate sale into his bank accounts, despite his brother being listed as the property owner.

a. On May 9, 2022, an offer to purchase 4812 Addie Lane was signed by Adam Meland, seller, and John Braswell, buyer, for a purchase price of $555,000.[10]

---

[10] The offer was subsequently amended on May 29, 2022, to reflect a new price of $545,000.

Case 1:24-cv-00327-UA-JLW   Document 1-1   Filed 04/16/24   Page 19 of 24

b. On May 10, 2022, Braswell wired $25,000 to Meland's Personal Account. Ashely McGavin[11] transferred an additional $5,000 to this same account.

c. On June 7, 2022, Hutchens Law Firm, located in Fayetteville, NC, wired $484,335.22 to Meland's Copy Proz Account for proceeds for the sale of 4812 Addie Lane.

d. A North Carolina Warranty Deed was filed with the Cumberland County Register of Deeds on June 7, 2022, transferring title of "Lot 3, Henry's Place" from Adam Meland to Braswell and McGavin.

<u>3 Onyx Lane South, Pinehurst, NC</u>

(73) The funds from the real estate sale of 4812 Addie Lane, NC were then used to purchase 3 Onyx Lane South, Pinehurst, NC.

a. On June 8, 2022, $501,351.01 was wired from Meland's Copy Proz Account to the law firm of Williams, Deane and Herndon for a real estate closing.

b. Williams, Deane and Herndon, filed a North Carolina Warranty deed with the Moore County Register of Deeds on June 9, 2022, transferring title for 3 Onyx Lane South, Pinehurst from David Kim and wife, Rena, to Adam Meland.

c. On April 5, 2023, Adam Meland entered into an agreement to sell 3 Onyx Lane South with Wesley and Martha Berg.

d. Donnell G. Adams, Jr, Attorney at Law filed a North Carolina Warranty deed with the Moore County Register of Deeds on April 20, 2023, transferring title for 3 Onyx Lane South, Pinehurst from Adam Meland to Wesley Berg and Martha Berg, Trustees of the Berg Revocable Living Trust.

e. On April 25, 2023, Adam Meland deposited a $418,202.25 check from Donnell G. Adams, Jr. Attorney at Law's IOLTA account for the proceeds of the sale of 3 Onyx Lane South into his personal First Bank account ending in *9273.[12] The balance in the account prior to this deposit was $6,208.31.

---

[11] McGavin was listed on the deed as Grantee with Braswell as Joint Tenants with the Right of Survivorship.

[12] Adam Meland signed the offer to purchase and Settlement statement and asked that the proceeds from the sale be provided via a certified check delivered to 192

(74)   The funds from the sale of 3 Onyx Lane South were then used by Adam Meland to purchase 177 Westfield Drive, Rockingham.

   a.   On May 10, 2023, Adam Meland withdrew $210,415.15 from his First Bank account ending in *9273.  The withdrawal ticket stated "Williams, Deane and Herndon Law Office."  Between the date of the deposit for the proceeds of the 3 Onyx Lane sale described above and this withdrawal, there was only an additional $1,337 credited to this account.

   b.   On this same day, a North Carolina Warranty deed, prepared by Williams, Deane and Herndon, was filed with the Richmond County Register of Deeds, transferring title for 177 Westfield Drive, Rockingham, NC, from Brian Hough and wife Sabrina Hough to Adam Meland.

192 Rosalyn Road, Rockingham, NC

(75)   Meland's most recent primary residence, 192 Rosalyn Road in Rockingham, North Carolina, was purchased on January 10, 2023, with funds from both his Copy Proz and Personal bank accounts.

   a.   On January 10, 2023, two transfers were made from Copy Proz Account *1366 to Meland's Personal Account *0007 for $100,000 and $119,000.

   b.   That same day, $449,496.48 was wired from his Personal Account *0007 to Williams Deane and Herndon, at First Bank, with the reference "PHFMKRJXR /ACC/Closing for Meland."

   c.   Also on January 10, 2023, a deed was filed in Richmond County, NC for 192 Rosalyn Rd. Rockingham, NC 28379.  The deed was filed by Williams, Deane & Herndon and listed Meland as the Grantee.

116 Pineview Court, Rockingham, NC

(76)   An additional real estate transaction was identified during the search of Meland's businesses. Agents found a deed in Meland's car for the purchase of 116 Pineview Court, Rockingham, NC  28379.

_____

Rosalyn Rd. Rockingham, NC (Mark Meland's home address).  Additionally, the email address on the seller instructions was copyproz123@gmail.com.

a. On September 12, 2023, Williams, Deane and Herndon filed a North Carolina Warranty Deed transferring title of 116 Pineview Court, Rockingham, from Robert Edward Beck Jr. and Michelle Myers Beck (legally separated) to Alexander Meland.

b. That same day, $517,866.56 was wired from Copy Proz Account *1366 to Williams Deane and Herndon, at First Bank, for "House."

(77) On October 6, 2023, agents were made aware that this property was sold on or about September 27, 2023. Van Camp, Meacham & Newman, PLLC, filed a North Carolina Warranty Deed with the Richmond County Register of Deeds on October 3, 2023, transferring title from Alexander Meland to Jackson Real Estate Ventures, Equity Trust Company and Motown Property Management, LLC. The sale of 116 Pineview Court generated $266,585.98 in net proceeds, which are currently being held in the trust account of Van Camp, Meacham & Newman, PLLC.

<u>119 Pineview Court, Rockingham, NC</u>

(78) Agents were also made aware that Alexander Meland purchased 119 Pineview Court, Rockingham, NC on the same day that he sold 116 Pineview Court. Van Camp, Meacham & Newman, PLLC were also the closing attorneys on this real estate transaction.

(79) On September 22, 2023, agents noted two wires from Meland's Copy Proz Account *1366:

a. $220,000 was wired to Adam Meland's First Bank account ending in *9273. According to records obtained from First Bank, on September 26, 2023, Adam Meland withdrew $220,000 from this account and deposited it into Alexander Meland's First Bank Account ending in *9265.

b. $240,000 was wired to Alexander Meland's First Bank Account ending in *9265.

c. In total, $460,000 of proceeds from Copy Proz *1366 was credited to Alexander Meland's First Bank Account ending in *9265.

(80) Van Camp, Meacham & Newman records show that the source of funds for the purchase of 119 Pineview Court was a $460,000 wire, dated September 26, 2023, from Alexander Meland and a $150,000 wire from Sarchione Auto Gallery, LLC. The Sarchione wire represented the proceeds from the sale of two vehicles owned by Mark Meland: a Toyota and a Mercedes.

## V. **CONCLUSION**

(81)    The movement of funds through the various financial accounts and into cash and other assets is visually depicted in the chart below:



(82)    Based on the foregoing, there is probable cause to believe that Mark Meland and others were involved in the manufacture and distribution of controlled substances in violation of the Controlled Substances Act (CSA), that they knowingly engaged in transactions involving the proceeds thereof with the intent to promote said unlawful activity, or to conceal or disguise the nature, source, ownership or control of the proceeds of said unlawful activity, that they knowingly engaged in monetary transactions in criminally derived property of a value greater than $10,000, and that they conspired to commit money laundering, in the Middle District of North Carolina and elsewhere, in violation of the CSA, 21 U.S.C. §§ 801 et seq., and 18 U.S.C. §§ 1956 and 1957 .

(83)    Based on the foregoing, I further submit there is probable cause to believe that the Subject Properties:

  a.   were involved in transactions or attempted transactions in violation of 18 U.S.C. §§ 1956 or 1957, or are traceable thereto, and are therefore subject to civil forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A);

Case 1:24-cv-00327-UA-JLW   Document 1-1   Filed 04/16/24   Page 23 of 24

b. constitute or are derived from proceeds of specified unlawful activity (as defined in 18 U.S.C. § 1956(c)(7)) or a conspiracy to commit such offense, namely violations of the CSA, and are therefore subject to civil forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C); and

c. were furnished or intended to be furnished in exchange for a controlled substance or listed chemical in violation of the CSA, or are traceable to such an exchange, or were used or intended to be used to facilitate a violation of the CSA and are therefore subject to civil forfeiture pursuant to 21 U.S.C. § 881(a).

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed this 16th day of April, 2024.

_____
Jeffrey Gruppo
Special Agent
U.S. Food and Drug Administration,
Office of Criminal Investigations